**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 24-cv-3375 (JMC) |
| v. | |
| APPROXIMATELY 2210.8222 OF SOL CRYPTOCURRENCY, | |
| Defendant *in rem*. | |

## MEMORANDUM OPINION

The United States brought this forfeiture action *in rem* against over 2200 units of SOL, a cryptocurrency that operates on the Solana blockchain (Defendant Property).[1] The Government argues that the Defendant Property is subject to seizure and forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) as property "constituting or derived from proceeds traceable to computer fraud" in violation of 18 U.S.C. § 1030. ECF 10 ¶¶ 43–45. The Government has satisfied the requisite notice requirements, yet potential claimants have failed to appear or defend this action. The Clerk of Court entered default, and the Government now moves for an entry of default judgment. The Court finds that the Government has demonstrated its entitlement to such judgment and **GRANTS** the motion.[2]

---

[1] The Government noted that, while the case caption references approximately 2210.8222 SOL, after transaction fees involved in transferring the funds to the U.S. Marshals Service, the Government received approximately 2204.7622 SOL, which now constitutes the Defendant Property.

[2] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

## I.    FACTUAL BACKGROUND

This case arises out of an FBI investigation of a cryptocurrency heist perpetuated by North Korean hackers known as the Lazarus Group. ECF 10 ¶¶ 26, 30. On April 29, 2024, Rain Management W.L.L. (Rain), a licensed crypto-asset service provider headquartered in the Kingdom of Bahrain, was targeted by members of the Lazarus Group using a malware scheme, resulting in a financial loss of $16.13 million. *Id.* ¶ 30. Upon conducting an internal investigation, Rain discovered that an employee's device had been compromised. *Id.* ¶ 33. The North Korean hackers had contacted the employee on LinkedIn, asking if they were interested in a new job. Once the employee expressed interest, the hackers sent the employee "a malicious link disguised as a coding challenge," which compromised the device with malware. *Id.* ¶ 33; *id.* ¶ 27 (describing how the Lazarus Group often operates through false job interviews offered on LinkedIn, inviting unwitting employees to "execute a project from a GitHub repository that is malicious in nature"). The hackers stole private keys and credentials that provided access to Rain's online infrastructure. *Id.* ¶ 34. The Lazarus Group hackers then "launder[ed] the virtual currency" to "obfuscate" the origin of the stolen funds. *Id.* ¶ 41. The FBI was able to freeze a portion of the funds— approximately 2210.8222 SOL—on a virtual currency exchange known as WhiteBIT, which is headquartered in Lithuania. *Id.* ¶ 30. After the FBI served WhiteBIT with a seizure warrant for the funds, WhiteBIT transferred the funds to the Government and the funds are "currently located in the United States under the control of the U.S. Marshals Service." *Id.* ¶ 31.

The relevant transactions involving the Defendant Property took place on the Solana blockchain, which is run by the U.S.-based Solana Labs. *Id.* ¶ 42. SOL refers to the crypto asset that is the "native token of the Solana blockchain." *SEC v. Coinbase, Inc.*, 726 F. Supp. 3d 260, 275 (S.D.N.Y. 2024). The Solana blockchain is "a decentralized network that allows users to

create, transfer, and trade" such tokens "without any central authority." *Aguilar v. Baton Corp.*, No. 25-cv-880, 2025 WL 3523133, at *1 (S.D.N.Y. Dec. 9, 2025). The Government states that the relevant computer nodes that enabled the transactions on the Solana blockchain "were located around the world, including in the District of Columbia." ECF 10 ¶ 42; *see Aguilar*, 2025 WL 3523133, at *1 ("Solana Labs relies on computers called validators, which process transactions and maintain the integrity of the network.").

## II.   PROCEDURAL HISTORY

On December 3, 2024, the Government filed a verified complaint asserting a civil forfeiture action *in rem* against the Defendant Property. ECF 1. That day, the Court made a probable cause finding and issued a warrant for arrest *in rem* with regards to the Defendant Property. ECF 3. On January 20, 2025, the Government commenced notification of this forfeiture online at forfeiture.gov for thirty consecutive days. ECF 4-1 at 3–4. Verified claims in response to this notice were due no later than March 20, 2025. ECF 8 ¶ 12. No claims based on publication were filed. *Id*. The Government also sent direct notice to counsel for Rain. *Id.* ¶ 13. While Rain did not file a claim, it did submit a petition for remission. *Id.*

No party filed a claim or answer in this case, and on April 17, 2025, the Government moved for entry of default. ECF 6. The Clerk of Court granted an entry of default the next day. ECF 7. Next, on June 6, 2025, the Government moved for default judgment. ECF 8. In October 2025, the Court ordered the Government to file supplemental briefing with the Court detailing the factual and legal bases for finding that the Defendant Property had the necessary nexus with the United States to satisfy the elements of the underlying criminal statutes. Oct. 16, 2025 Min. Order. The Government filed its amended complaint on January 23, 2026. ECF 10.

### III.    LEGAL STANDARD

The Federal Rules of Civil Procedure authorize a district court to enter default judgment against a defendant who fails to defend its case. Fed. R. Civ. P. 55(b)(2). "Obtaining a default judgment is a two-step process." *United States v. Twenty-Four Cryptocurrency Accts.*, 473 F. Supp. 3d 1, 4 (D.D.C. 2020); *see* Fed. R. Civ. P. 55(a)–(b). First, a plaintiff must request the Clerk of the Court to enter default against a party who "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Whether default judgment is appropriate is "committed to the sound discretion of" the trial court. *Boland v. Yoccabel Constr. Co.*, 293 F.R.D. 13, 17 (D.D.C. 2013). A defendant's failure to respond "does not automatically entitle plaintiff to a default judgment." *United States v. $6,999,925.00 of Funds Associated with Velmur Mgmt. Pte. Ltd.*, 368 F. Supp. 3d 10, 17 (D.D.C. 2019). The complaint must still plead sufficient allegations which, when taken as true, state a claim for relief for the plaintiff to be entitled to default judgment. *Id.*

Here, the Government seeks default judgment in a civil forfeiture action *in rem*. Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) set forth the pleading requirements for such an action. First, Supplemental Rule G(1) requires that a forfeiture action *in rem* properly "aris[e] from a federal statute." Fed. R. Civ. P. Supp. R. G(1). Next, Supplemental Rule G(2) requires that a complaint must (a) be verified; (b) state the grounds for the court's subject-matter jurisdiction, *in rem* jurisdiction over the property, and venue; (c) describe the property with "reasonable particularity"; (d) if the property is tangible, identify where the property was seized or else "its location when the action is filed"; (e) identify the statutory cause of action; and (f) "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *Id.* G(2).

4

Finally, before default judgment is issued for forfeiture *in rem*, "the government must show that it complied with the notice requirements contained in the Supplemental Rules." *United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 324 F. Supp. 3d 38, 46 (D.D.C. 2018); *see* Fed. R. Civ. P. Supp. R. G(4).

## IV.    ANALYSIS

The Court finds that default judgment is warranted. The Government complied with notice requirements and the verified complaint contains sufficient information to support a finding by the preponderance of the evidence that forfeiture of the Defendant Property is appropriate under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. ECF 10 ¶¶ 43–45.

### A. Notice

Before the Court enters default judgment, the Government must show that it complied with the notice requirements in the Supplemental Rules. Supplemental Rule G requires two forms of notice in a forfeiture action *in rem*: notice via publication as well as direct notice to potential claimants. *See* Fed. R. Civ. P. Supp. R. G(4)(a), (b). Here, the Government has satisfied its obligation as to both publication and direct notice.

First, the Government provided publication notice. Publication notice requires the Government to "describe the property, state the time to file a claim and answer, and name the government attorney to be served with the claim and answer." *Cryptocurrency Accts.*, 473 F. Supp. 3d at 5 (citing Fed. R. Civ. P. Supp. R. G(4)(a)(ii)). Such notice can be published "on an official internet government forfeiture site for at least 30 consecutive days." Fed. R. Civ. P. Supp. R. G(4)(a)(iv)(C). In this case, the Government published a notice of forfeiture online at http://www.forfeiture.gov on January 20, 2025. ECF 8 ¶ 12. The publication contained all the

required information and was publicly available for thirty consecutive days. ECF 4-1 at 2–3. No claims based on publication were filed. ECF 8 ¶ 12.

Second, the Government satisfied the direct notice requirement. Direct notice must be sent "to any person who reasonably appears to be a potential claimant." Fed. R. Civ. P. Supp. R. G(4)(b)(i). Actual notice is not required, but the government must send direct notice "by means reasonably calculated to reach the potential claimant." *Id*. G(4)(b)(iii)(A). On December 5, 2024, the Government sent notice of this forfeiture action to counsel for Rain, the only potential claimant known to the Government in this case. ECF 8 ¶ 13. By notifying Rain, the Government has satisfied its burden to provide direct notice of this action. Accordingly, the Government has met both the publication notice and direct notice requirements established by the Supplemental Rules.

## B. Adequacy of Complaint

As described above, default judgment in a civil forfeiture action *in rem* requires the Government to fulfill two requirements. First, the Government must demonstrate that its forfeiture action adequately "aris[es] from a federal statute." Fed. R. Civ. P. Supp. R. G(1). Second, its complaint must satisfy the six elements set forth in Supplemental Rule G(2): "(a) be verified; (b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden at trial." *Id.* G(2). Rule G(1) effectively collapses into (G)(2)'s requirements, so the Court addresses the Rules collectively below.

The Government has filed a verified compliant "identifying the statute under which the forfeiture action was brought and describing the Defendant Propert[y] in extensive detail." *Cryptocurrency Accts.*, 473 F. Supp. 3d at 6–7; ECF 10 ¶¶ 38–48 (describing the Defendant Property and the statutory provisions under which forfeiture is sought). The Court also finds that the complaint properly establishes the bases for subject-matter jurisdiction and venue. Under 28 U.S.C. § 1355(a), district courts "have original jurisdiction . . . of any action or proceeding for . . . forfeiture, pecuniary or otherwise, incurred under any Act of Congress"—in this case, 18 U.S.C. § 981. Further, under 28 U.S.C. § 1345, "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States." This being a civil forfeiture action initiated by the United States, the Court is satisfied that it has subject-matter jurisdiction. Additionally, venue can be established under 28 U.S.C. § 1395. Under 28 U.S.C. § 1395(b), a civil proceeding for forfeiture "may be prosecuted in any district where such property is found" and, under subsection (c), "[a] civil proceeding for the forfeiture of property seized outside any judicial district may be prosecuted in any district into which the property is brought." Because the Defendant Property was seized outside of any judicial district and is now under the control of the U.S. Marshals Service, which operates in this district, the Court finds that venue is proper here. ECF 10 ¶ 31. Finally, the Court finds that it has *in rem* jurisdiction over the Defendant Property held by the U.S. Marshals Service. *See United States v. All Assets Held in Acct. No. XXXXXXXX*, 330 F. Supp. 3d 150, 156 (D.D.C. 2018) ("Traditionally, when exercising in rem jurisdiction, the defendant property is physically present within the court's territorial jurisdiction."); *United States v. $299,218.48 in U.S. Currenc*y, 742 F. Supp. 3d 1, 6 (D.D.C. 2024) ("The defendant funds are located within this court's territorial jurisdiction because DHS transferred them to an account in Washington, D.C. after their seizure.").

The final element is whether the Government has alleged sufficient facts in its complaint to "support a reasonable belief that the [G]overnment will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f); *see Mingzheng Int'l Trading*, 324 F. Supp. 3d at 41 (requiring that the complaint "establish a reasonable belief that the government could prove by a preponderance of the evidence that [Defendant Property is] subject to civil *in rem* forfeiture"). Supplemental Rule G(2) "does not articulate an onerous standard," but instead establishes a "low bar" that is appropriate at the default judgment stage "where a court should exercise greater flexibility in judging factual allegations." *Mingzheng Int'l Trading*, 324 F. Supp. 3d at 51–52.

The complaint satisfies this low bar. The Government alleges, among other bases, that the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) because it is property "constituting or derived from proceeds traceable to" computer fraud under 18 U.S.C. § 1030. ECF 10 ¶¶ 43–45. 18 U.S.C. § 1030(a)(5)(A) criminalizes activity that "knowingly causes the transmission of a program, information, code, or command, and . . . intentionally causes damage without authorization, to a protected computer." The statute defines "protected computer" as any computer "which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." *Id.* § 1030(e)(2)(B).

The complaint lays out a scheme in which North Korean hackers illicitly accessed the Defendant Property through a series of transactions on the Solana blockchain. ECF 10 ¶ 38–42. As described above, the Solana blockchain is "a decentralized network that allows users to create, transfer, and trade digital tokens" known as SOL "without any central authority." *Aguilar*, 2025 WL 3523133, at *1. The system relies on computers called validators to "process transactions

and maintain the integrity of the network." *Id.* The Government alleges that the hackers caused "damage without authorization" to "protected computers" running the Solana blockchain. ECF 10 ¶ 5 (quoting 18 U.S.C. § 1030(a)(5)(A)). The complaint states that the hackers inflicted "damage[]" when they "initiated transactions that caused Solana's data to reflect these unauthorized transfers." *Id.* It further states that "Solana operates via a web of interconnected computers all around the world, including in Washington, D.C.," and that the computers in Washington, D.C. "are the protected computers in this case." *Id.*

The Court finds that the Government has established that it would likely be able to satisfy its burden at trial that the Defendant Property constitutes the proceeds of computer fraud and is therefore subject to forfeiture. At least some of the Solana blockchain operates on U.S.-based computers and, in making a series of illicit transactions, the hackers altered the data on those computers, thereby causing damage to them without authorization. *See* 18 U.S.C. § 1030(a)(5)(A). The Court further notes that, even if only Solana nodes outside of the United States were involved in the transactions, such conduct would still be covered by the statute, which extends to any computer "used in a manner that affects interstate or foreign commerce or communication of the United States." 18 U.S.C. § 1030(e)(2)(B). To register a transaction on the Solana blockchain, it is likely that the relevant computers had to communicate with U.S.-based computers. *See Ryanair DAC v. Expedia Inc.*, No. 17-cv-1789, 2018 WL 3727599, at *3 (W.D. Wash. Aug. 6, 2018) (noting that the conduct regulated by the computer fraud statute "basically happens simultaneously at the locations of the accessor and the accessed computer, with limitless possible locations that the transmitted data may pass through in between"); *Ryanair DAC v. Booking.com B.V.*, No 20-cv-1191, 2025 WL 266631, at *6–*7 (D. Del. Jan. 22, 2025) (finding that a European airline company's website was a computer that affected "interstate or foreign commerce or

communication"). As such, the Court finds that the Government has thus met its burden under Supplemental Rule G(2) and alleged facts sufficient to establish a reasonable belief that it would be able to prove its forfeiture claim by a preponderance of the evidence. As a result, both Supplemental Rules G(1) and G(2) are satisfied.

\* \* \*

Because the verified complaint states a claim for forfeiture *in rem* pursuant to Supplemental Rules G(1) and G(2), the Government has complied with the notice requirements of Supplemental Rule G(4), and no claimant has appeared in this action, the Government's motion for default judgment, as supplemented by the details in the amended complaint, is **GRANTED**. It is further **ORDERED**:

1. That default judgment is hereby entered against all persons or entities claiming an interest in the Defendant Property;

2. That the Defendant Property shall be forfeited to the United States of America and no right, title, or interest in the following property shall exist in any other entity or person;

3. Title to the Defendant Property is vested solely in the United States;

4. That the Defendant Property shall be disposed of according to law; and

5. That no additional action is required, and this matter is dismissed. The Clerk of Court is directed to close this case.

A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: March 11, 2026

10